IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02951-KLM

RANDY PERRIAN,

      Plaintiff,

v.

SCF SERGEANT BUSTER COONS, in his individual and official capacities,
SCF SERGEANT ROBERT BROWN, in his individual and official capacities,
LARRY GRAHAM, in his individual and official capacities,
TOM CLEMENTS, in his individual and official capacities,
JOHN CHAPDELAINE, in his individual and official capacities,
SCF MAJOR TIM USRY, in his individual and official capacities,
LIEUTENANT ALLEN HARMS, in his individual and official capacities,
SCF COPD BOARD MEMBER KIM WOOD, in her individual and official capacities,
SCF COPD BOARD MEMBER JIM LUECK, in his individual and official capacities,
SCF LIEUTENANT H.J. HENDERSON, in his individual and official capacities,
UNKNOWN SCF ADMINISTRATION HEAD,

      Defendants.

_____

## ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss** [#24][1] (the

"Motion"). Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a Response [#28]

---

[1] "[#24]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout the Order.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a pro se litigant's advocate, nor should it "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

in opposition to the Motion. Defendants have not filed a reply and their time to do so has elapsed. *See* D.C.COLO.LCivR 7.1(d). The Court has reviewed the Motion, the Response, the entire case file, and is sufficiently advised in the premises.[3]  For the reasons set forth below, the Motion [#24] is **GRANTED in part** and **DENIED in part**.

## I. Summary of the Case

### A.   Procedural Background

On October 28, 2013, Plaintiff, an inmate at Sterling Correctional Facility ("SCF"), filed his Complaint pursuant to 42 U.S.C. § 1983 alleging that he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights regarding an incident in the prison kitchen, and that he experienced retaliation in violation of his First Amendment rights for reporting the incident. *See Compl.* [#1] at 9-15. On November 5, 2013, the Court noted that Plaintiff's Complaint was "unnecessarily verbose and disorganized" and directed him to file an amended complaint that identified, "clearly and concisely and in plain language, who he is suing, the specific claims he is asserting, the specific facts that support each asserted claim, against which defendant or defendants he is asserting each claim, and what each defendant did that allegedly violated his rights." *Order Directing Plaintiff to File Amended Complaint* [#6] at 3.  Further, the Court noted that Plaintiff's Complaint failed to allege facts demonstrating that each of the named defendants personally participated in the asserted constitutional violations and directed him to file an amended complaint that "alleges specific facts demonstrating how each named defendant personally participated in the asserted constitutional violations." *Id.* at 5.  On December 12, 2013, Plaintiff filed his

---

[3]  The case has been referred to the undersigned for all purposes [#33] pursuant to the Courts Pilot Program and 28 U.S.C. § 636(c), upon consent of the parties [##31, 32].

Amended Complaint [#9], which is the operative pleading in this case.

## B.  Factual Allegations

Plaintiff's Amended Complaint lists two claims. *Am. Compl.* [#9] at 8-13.  Plaintiff's

first claim is titled "Defendants Brown and Coons Violated Plaintiff's 8th Amendment Right

to Remain Free From Excessive Use of Force." *Id.* at 8. Plaintiff alleges that on October 26,

2011 while he was working in the kitchen at SCF, an incident took place during which

Defendant Buster Coons ("Coons")  put him in handcuffs and applied unnecessary force

to his right wrist, which had been previously injured, causing Plaintiff to cry out in pain. *Id.*

Plaintiff alleges that Defendant Coons and Defendant Robert Brown ("Brown") then

slammed Plaintiff against the wall, "wrenching his right wrist upward painfully." *Id.* at 9.

Plaintiff allegedly told Defendants Coons and Brown that the right handcuff was too tight,

and another officer, Captain Brooks, directed Defendants Brown and Coons to loosen the

cuffs. *Id.* Plaintiff alleges that Defendants Coons and Brown exerted excessive force in

applying a second set of handcuffs so they could remove the first set of handcuffs. *Id.*

Plaintiff maintains that he was then escorted to the medical center where an examination

revealed that his right wrist was bleeding from the application of the first set of handcuffs.

*Id.*  Plaintiff avers that the grievance he filed complaining about this incident was denied

and that he wrote a letter to officials at the Colorado Department of Corrections ("CDOC")

regarding the incident but that no official action was taken by the CDOC.  *Id.*  Plaintiff

further alleges that Defendant Larry Graham ("Graham"), a CDOC investigator, was told

to investigate the use of force claim and never conducted an investigation, thus, "through

these actions Defendant Graham intentionally covered up the excessive use of force." *Id.*

at 10.  The Court will treat this claim as an Eighth Amendment excessive force claim

against Defendants Coons, Brown, and Graham.[4]

---

[4]  The Court need not adhere to the legal labels, or lack thereof, attached by a pro se plaintiff to his claims. *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis"). However, in this case Plaintiff has specifically labeled his claims as either Eighth Amendment excessive force claims or First Amendment retaliation claims, and the allegations he makes against each Defendant correspond to the underlying legal basis of those claims in large part.

   The Court does not address the claim against Defendant Graham as a conspiracy claim because Plaintiff does not allege that Defendant Graham participated in a conspiracy. Further, Plaintiff's allegations are insufficient to support a claim for conspiracy because Plaintiff must allege not only an "agreement" to deprive him of his rights, but must also prove an actual deprivation of a constitutional right in order to recover on a § 1983 conspiracy claim. *Dixon v. City of Lawton,* 898 F. 2d 1443, 1449 (10th Cir. 1990). Because the court concludes below in Section III.D.1 that Plaintiff fails to state an Eighth Amendment excessive force claim, Plaintiff cannot prove an actual deprivation of his Eighth Amendment rights about which Defendant Graham might have conspired to deprive him.

   Additionally, the Court will analyze the claim against Defendant Graham as an Eighth Amendment claim rather than a Due Process claim pursuant to the Fourteenth Amendment because "due process claims are generally disfavored if the claim can be analyzed under 'an explicit source of constitutional protection.'" *Escobar v. Holditch,* No. 10-cv-02050-CMA-KLM, 2012 WL 592851 at * 7 (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)). Accordingly, the Court will analyze Plaintiff's claims as either Eighth Amendment or First Amendment claims, corresponding to Plaintiff's labels in his Amended Complaint. *See Am. Compl.* [#9] at 8-13.

   However, even if the Court analyzed Plaintiff's claim against Defendant Graham as a Fourteenth Amendment due process claim, his claim would fail. Regarding this Defendant, Plaintiff alleges the following:

> As a result of the above grievances and letter, Defendant Larry Graham (an investigator in the CDOC Office of the Inspector General) was told to investigate the use of force claim. However, the Defendant never actually conducted an official investigation. He never attempted to ascertain the truth of [Plaintiff's] claims, never spoke to the Plaintiff concerning the use of force, and did nothing to preserve any evidence (such as the video) relating to the use of force by Defendants Coons and Brown. Through these actions Defendant Graham intentionally covered up the excessive use of force. This was meant to maintain an unwritten policy in the SCF of not holding correctional officers accountable for their excessive application of force against inmates. In this way, Defendant Graham was just as accountable as Defendants Coons and Brown for the violation of [Plaintiff's] Eighth Amendment rights.

*Am. Compl.* [#9] at 10.  As discussed below in Section III.D.1.c, the Tenth Circuit has made clear that "[d]enial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation for purposes of a Section 1983 claim." *Sherratt v. Utah Dept. of Corr.*, 545 F.App'x. 744, 747 (10th Cir. 2013) (citations omitted).  Because Plaintiff's allegations against Defendant Graham relate solely to his alleged failure to properly investigate Plaintiff's grievance regarding the alleged use of excessive force, under *Sherratt*, he has failed to allege the personal

Plaintiff's second claim is titled "Retaliation for Exercise of First Amendment Rights of Free Speech and to Petition the Government for Redress of Grievances." *Id.* Plaintiff alleges that after filing his grievance regarding the incident with Defendants Coons and Brown, Plaintiff sent letters to various departments within SCF and the CDOC requesting assistance in obtaining video of the incident and investigating his claim. *Id.* Plaintiff maintains that the matter was turned over to Defendant John Chapdelaine ("Chapdelaine"), an associate warden at SCF at the time, and Defendant Major Tim Usry ("Usry"). *Id* at 11. Plaintiff alleges that Defendant Chapdelaine ordered Defendant Lieutenant H.J. Henderson ("Henderson") to file Colorado Code of Penal Discipline ("COPD") charges against Plaintiff. *Id.* Plaintiff further alleges that "Defendant Usry responded by advocating for [Plaintiff] to face consequences for the complaint, and by working with Defendant Graham to cover up the excessive use of force (*see* Claim One above)." *Id.* Plaintiff alleges that Defendant Chapdelaine's and Defendant Usry's actions were "direct retaliation against [Plaintiff] for exercising his First Amendment right of Free Speech and petition for redress of grievances." *Id.*

On December 28, 2011, Plaintiff alleges he was served with a CDOC Notice of Charges alleging that he had committed an infraction for "False Reporting to Authorities" under Rule 21 of the COPD. *Id.* The notice allegedly explained that Plaintiff's claims of excessive force included in his grievance filed after the incident and his other statements requesting assistance investigating the incident were misleading because "staff were taking appropriate actions to mitigate the situation that [Plaintiff] calls excessive." *Id.* The hearing

---

participation required to state a claim under § 1983 for violation of the Fourteenth Amendment.

for these charges was held on January 10, 2012 before a panel of three hearing officers: Defendant Lieutenant Allen Harms ("Harms"), Defendant Lieutenant Kim Wood ("Wood"), and Defendant Lieutenant Jim Lueck ("Lueck").  Defendant Henderson was the prosecuting officer.  *Id.* at 12.  Defendant Henderson allegedly argued that the force applied by Defendants Coons and Brown was not excessive, while Plaintiff testified that he honestly believed the force used was excessive because it was extremely painful and left a scar on his wrist.  *Id.*  At the conclusion of the hearing, the panel found Plaintiff guilty of false reporting by a vote of two to one.  *Id.*  As a result, Plaintiff was punished with twenty days punitive segregation and thirty days loss of good time.  *Id.*  According to Plaintiff, as a result of the segregation, he lost his job in the kitchen, and was also placed in a restrictive "Intensive Management Program" after completing the segregation.  *Id.*

On or about January 18, 2012, Plaintiff allegedly appealed his COPD conviction of false reporting, and the conviction was upheld by an "Unknown Administrative Head," who "also violated [Plaintiff's] right to be free from retaliation for the exercise of his right to Free Speech and redress of grievances."  *Id.* at 13.  In May 2012, Plaintiff allegedly appealed his conviction to the Logan County District Court by filing a complaint pursuant to Colo. R. Civ. P. 106, and as a result the CDOC sent Plaintiff an expungement order for the COPD false reporting charge.  *Id.*  The Court will treat this claim as a First Amendment retaliation claim against Defendants Chapdelaine, Usry, Henderson, Harms, Wood, Lueck, and Unknown Administrative Head.

Plaintiff requests declaratory relief for both claims, injunctive relief for the First Amendment claim, "compensatory damages in the amount of $25.000 [sic] thousand dollar[s] against all defendants jointly and severally," and "punitive damages in the amount

of $25.000 [sic] thousand dollar[s] against all defendant's, [sic] jointly and severally." *Id.*
at 14.

## C.   The Motion

Defendants argue that Plaintiff's claims should be dismissed under Fed. R. Civ. P.
12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim on
which relief may be granted. *Motion* [#24] at 2-3.  Defendants argue that to the extent that
they are being sued in their official capacities, they are "immune from claims for monetary
and declaratory relief under the Eleventh Amendment," because the Eleventh Amendment
bars a suit brought in federal court by citizens of a state against the state or its agencies
and constitutes a bar to the exercise of federal subject matter jurisdiction.  *Id.* at 4.
Defendants also argue that Plaintiff's first claim of excessive force in violation of the Eighth
Amendment is barred by the application of the statute of limitations.  *Id.* at 5.  Defendants
maintain that because Colorado provides for a two-year statute of limitations for actions
brought under § 1983, and Plaintiff's first claim stems from an October 26, 2011 incident,
Plaintiff failed to file his claim within the applicable statute of limitations period of two years
when he filed this action on October 28, 2013.  *Id.* at 6.  Additionally, Defendants argue that
Plaintiff's Eighth Amendment claim for excessive force fails to state a claim on which relief
may be granted because "the force used by Defendants in applying handcuffs and pushing
Plaintiff up against the wall are too *de minimis* to constitute an Eighth Amendment
violation."  *Id.* at 8.

Defendants also argue that "Plaintiff's retaliation claim fails to state a claim" because
Plaintiff was charged with false reporting not because he filed a grievance, but rather,
because the Defendants believed that Plaintiff had knowingly falsified or mislead staff

through his allegations. *Id.* at 9-11.  Additionally, Defendants argue that "Plaintiff's request for injunction [sic] relief relating to the disciplinary charge of False Reporting under the COPD has been rendered moot." *Id.* at 11.  Defendants argue that because the Executive Director of the CDOC promulgated a new version of the COPD that no longer contains a charge for False Reporting to Authorities, any injunctive relief sought by Plaintiff relating to the charge of false reporting has been rendered moot. *Id.* at 12.  Finally, Defendants argue that they are entitled to qualified immunity in their individual capacities because Plaintiff has failed to sufficiently allege that any Defendant knowingly violated Plaintiff's clearly established federal constitutional or statutory rights. *Id.* at 13.

On June 19, 2014, Plaintiff filed a Response to the Motion arguing that "the Court has jurisdiction over the Defendants and the Court should reject their Eleventh Amendment arguments" because "Plaintiff sues the Defendants in both their official and individual capacities." *Response* [#28] at 3.  Plaintiff also responds to Defendants' argument about the statute of limitations by arguing that his complaint was filed in a timely manner. *Id.* at 3. Plaintiff argues that "a prisoner's complaint or other document is filed as of the time that the prisoner gives it to prison staff or places it in the prison mailbox consistently with prison procedure for legal mail." *Id.* at 4 (citing *Price v. Philpot,* 420 F. 3d 1158, 1164 (10th Cir. 2005)). Plaintiff argues that since he filed his complaint in the SCF prison legal mail log on October 24, 2013, two days before the two-year statute of limitations expired, his Complaint was timely  filed. *Response* [#28] at 4.  Regarding his Eighth Amendment claim for excessive force, Plaintiff argues that Defendants Coons and Brown used force maliciously and sadistically, that the force used was not *de minimis,* and that the amount of force used exceeded the need for force under the circumstances. *Id.* at 4-6.

Regarding his First Amendment retaliation claim, Plaintiff argues that he "set forth a valid First Amendment claim to be free from retaliation" because Plaintiff engaged in a protected activity by filing a complaint or grievance and Plaintiff suffered an adverse action by being convicted of false reporting, being placed in punitive segregation for 20 days, losing 30 days of good time, and being placed in an intensive management program. *Id.* at 7-8.  Plaintiff further argues that his claim for monetary damages cannot be moot, and that even though the CDOC has removed the charge of false reporting from the COPD, there remains a danger that the CDOC will re-institute a similar practice in the future. *Id.* at 8.  Plaintiff fears that he will be charged with "Fraud or Forgery," which is "similarly worded to the old False Reporting charge: both deal with the intent to deceive or misleading statements." *Id.* at 9.  Plaintiff argues that "policy changes do not moot a case if they fail to address *all* aspects of the dispute between the parties." *Id.* (citing *Longstreth v. Maynard,* 961 F. 2d 895, 900 (10th Cir. 1992)). Finally, Plaintiff argues that Defendants are not entitled to qualified immunity because the constitutional rights which Plaintiff alleges were violated by Defendants were clearly established, and that Plaintiff has set forth sufficient facts to plausibly suggest that his rights were violated. *Response* [#28] at 9-10.

## II.  Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction.  The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).  The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on

its own initiative, at any stage in the litigation.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  If at any time, the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action.  Fed. R. Civ. P. 12(h)(3);  *Arbaugh*, 546 U.S. at 506.  A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings.  *Id.* at 1003.

**B.     Fed. R. Civ. P. 12(b)(6) and 8(a)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers

'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)).  As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible."  *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry."  *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010).  Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims."  *Tuttamore*, 429 F. App'x at 689.

C.     **Substantial Deference Accorded to Prison Administrators**

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.   *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (internal quotation marks and citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

## III.  Analysis

The Court addresses Plaintiff's claims by grouping them based on the threshold legal issues raised and then addresses the claims in the order Plaintiff presents them in his Amended Complaint.

A.      **Claims Against the Executive Director of the CDOC**[5]

The twin purposes of a complaint are to give the opposing parties fair notice of the

basis for the claims against them so that they may respond and to allow the Court to

conclude that the allegations, if proven, show that the plaintiff is entitled to relief.  *See*

*Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*, 891

F.2d 1473, 1480 (10th Cir. 1989).  The requirements of Fed. R. of Civ. P. 8 are designed

to meet these purposes.  *See TV Comm's Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062,

1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992).  Specifically, Rule 8(a) provides

that a complaint "must contain (1) a short and plain statement of the grounds for the court's

jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is

entitled to relief; and (3) a demand for the relief sought . . ."  Fed. R. Civ. P. 8(a).  The

philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation

must be simple, concise, and direct."  "Taken together, Rules 8(a) and (d)(1) underscore

the emphasis placed on clarity and brevity by the federal pleading rules.  Prolix, vague, or

unintelligible pleadings violate the requirements of Rule 8."  *Greenway Nutrients, Inc. v.*

---

[5]  As noted by Defendants in the Motion, Tom Clements, Executive Director of the CDOC at the time the events alleged in the Complaint occurred, is deceased.  *Motion* [#24] at 1.  Pursuant to Fed. R. Civ. P. 25(d), "an action does not abate when a public officer who is a party in an official capacity dies . . . . The officer's successor is automatically substituted as a party . . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution."  Here, Tom Clements' successor is the new Executive Director of the CDOC, Rick Raemisch.  *See Motion* [#24] at 12.  Thus, although Tom Clements is deceased, Rick Raemisch in his official capacity is automatically substituted for Tom Clements in his official capacity pursuant to Rule 25(d) and the Court accordingly addresses those claims.  The Court will refer to any allegations regarding Tom Clements and/or Rick Raemisch as allegations regarding the "Executive Director of the CDOC."  With regard to claims against Mr. Clements in his individual capacity, Plaintiff would have to pursue his action against Mr. Clements' estate.  *See, e.g.*, *Estate of Fuentes ex rel. Fuentes v. Thomas*, 107 F. Supp. 2d 1288, 1295 (D. Kan. 2000).  However, as discussed in footnote 6, the claims against Mr. Clements in his individual capacity are subject to dismissal pursuant to Fed. R. Civ. P. 25.

*Blackburn*, --- F. Supp.2d ---, No. 13-cv-01088-MSK-KMT, 2014 WL 1243671, at *9 (D. Colo. March 26, 2014).

As the Court previously explained to Plaintiff, in order to state a claim in federal court, Plaintiff's Amended Complaint "must explain who he is suing, the specific claims he is asserting, the specific facts that support each asserted claim, against which defendant or defendants he is asserting each claim, and what each defendant did that allegedly violated his rights." *Order Directing Plaintiff to File Amended Complaint* [#6] at 3 (citing *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)). Furthermore, "a claim for supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind." *Id.* at 2 (citing *Schneider v. City of Grand Junction Dept.*, 717 F.3d 760, 767-69 (10th Cir. 2013)). Finally, the general rule that pro se pleadings must be construed liberally has limits and "the [C]ourt cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, a plaintiff must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A supervisory official may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Iqbal*, 556 U.S. at 676 (2009).

-14-

Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson,* 614 F. 3d 1185, 1199 (10th Cir. 2010).

Plaintiff lists Tom Clements ("Clements") as a Defendant in the caption of his Amended Complaint and under "Parties" in the Amended Complaint. *Am. Compl.* [#9] at 1, 3.  He alleges that "Tom Clements was Executive Director of DOC at all times relevant to this Complaint.  In this capacity he exercised authority over the Plaintiff on behalf of the State of Colorado." *Id.*  However, in the body of his Amended Complaint, Plaintiff makes no further allegations regarding any actions of the Executive Director of the CDOC in connection with the circumstances described in the Amended Complaint. *See id.* at 8-13. With regard to both of Plaintiff's claims, that his Eighth Amendment rights were violated or that his First Amendment rights were violated, Plaintiff fails to offer any factual allegations regarding the Executive Director of the CDOC specifically that would put him "on notice of [his] alleged misconduct sufficient to prepare an appropriate defense . . . ." *Kansas Penn Gaming, LLC*, 656 F.3d at 1215. Accordingly, to the extent Plaintiff is bringing a claim pursuant to § 1983 against the Executive Director of the CDOC, the Court concludes that Plaintiff fails to adequately plead a claim against that Defendant in either his official or individual capacity pursuant to Rule 8. As a result, the Court thus concludes that Plaintiff's claim against Defendant Raemisch in his official capacity is **dismissed without prejudice** and his claim against Defendant Clements in his individual capacity is **dismissed with**

prejudice.[6]   However, because the Court concludes below in Section III.B. that all Defendants are entitled to Eleventh Amendment Immunity for acts in their official capacities in this case, to the extent Plaintiff seeks monetary damages for the official capacity claim brought against the Executive Director of the CDOC that claim is **dismissed without prejudice** for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[7]

## B.   Eleventh Amendment

Defendants first raise the issue of Eleventh Amendment immunity.  *Motion* [#24] at 4-5.  This challenges the Court's subject matter jurisdiction.  *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002).   The doctrine of Eleventh Amendment immunity protects states and their agents from suit when acting in their official capacities.  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-559 (10th Cir. 2000).   To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official

---

[6] Fed. R. Civ. P 25(a)(1) provides "If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." The Motion filed on May 9, 2014 noted the death of Tom Clements.  *Motion* [#24] at 1 n.1 ("Tom Clements is deceased").  Therefore, because 90 days have elapsed since service of the Motion noting Tom Clements' death, the time has elapsed for Plaintiff to substitute an appropriate party for him *in his individual capacity*, and any claim against him in that capacity must accordingly be dismissed with prejudice. *See Sheldon v. Vermonty,* 269 F. 3d 1202, 1207 n.5 (10th Cir. 2001) (stating that dismissal with prejudice was appropriate where the plaintiff had not shown that he could have stated viable causes of action against the defendants if he had been granted another opportunity to amend).

[7] The Court dismisses the official capacity claim against the Executive Director of the CDOC pursuant to Fed. R. Civ. P. 12(b)(1), as opposed to Fed. R. Civ. P. 8, because "[s]ubject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."  *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998); *see Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (noting that subject matter jurisdiction determines a federal court's power to adjudicate a dispute); *Lewis v. ex rel. Lewis v. Stevenson*, 123 Fed. App'x 885, 887 (10th Cir. 2005) (citing *City of Chicago*, 137 F.3d at 478).

capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985));  *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983).  Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief.  *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Here, Defendants are employees of the SCF and/or the CDOC.  *Am. Compl.* [#9] at 1-6.  Therefore, they are state officers.  Consequently, all of Plaintiff's official capacity claims against Defendants for monetary relief must be **dismissed without prejudice** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity.  *Shue v. Lampert*, 580 F.App'x 642, 644 (10th Cir. 2014) (unpublished decision).

**C.     The Statute of Limitations for the § 1983 Excessive Force Claim**

Defendant argues that Plaintiff's excessive force claim is barred by the applicable statute of limitations for claims brought pursuant to § 1983.  *Motion* [#24] at 5.  The applicable statute of limitations for claims brought pursuant to § 1983 in Colorado is two years. *See Blake v. Dickason,* 997 F. 2d 749, 750 (10th Cir. 1993); Colo. Rev. Stat. § 13-80-102(1)(I).  Defendant argues that because Plaintiff's Eighth Amendment claim stems from an October 26, 2011 incident and he did not file his Complaint until October 28, 2013, Plaintiff failed to file his claim within the statute of limitations. *Id.* at 6. However, because inmates have little control over when a complaint is ultimately filed with the court, the prison mailbox rule provides that  "an inmate who places a federal civil rights complaint in the

prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." *Price v. Philpot*, 420 F. 3d 1158, 1165 (10th Cir. 2005) (citing *Houston v. Lack,* 487 U.S. 266, 276 (1988)). The inmate must attest that such a timely filing was made and has the burden of proof on this issue.  *Price,* 420 F. 3d at 1165 (citing *United States v. Ceballos-Martinez,* 387 F. 3d 1140, 1143 (10th Cir. 2004)). An inmate can establish the date on which he gave the papers to be filed with the court to a prison official either by using the prison's legal mail system to prove compliance with the mailbox rule, or by submitting a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting forth the date of deposit with prison officials and attesting that the postage was pre-paid.  *Price*, 420 F. 3d at 1165.

Because Plaintiff has not submitted a declaration or notarized statement, the Court examines his arguments relating to his use of the prison's legal mail system.  The conduct underlying Plaintiff's claim allegedly occurred on October 26, 2011. *Am. Compl.* [# 9] at 8.  Thus, the applicable two-year statute of limitations period would have expired on October 26, 2013.  *See Blake,* 997 F. 2d at 750.  Plaintiff's Complaint [#1] was filed with the Court on October 28, 2013. *See generally Compl.* [#1].  However, in his Response [#28] Plaintiff asserts that he filed his complaint in the SCF legal mail log on October 24, 2013, and the envelope in which the complaint was delivered to the Court includes a paid stamp by the United States Postal Service with a date of October 25, 2013.  *See Compl., Attach. 1* [#1-1]; *Response* at 4.  Thus, the Court can infer that the Complaint papers were given to prison authorities for mailing on or before October 25, 2013, at least one day before expiration of the applicable statute of limitations for Plaintiff's claim for excessive force.  Therefore, Plaintiff's complaint may be treated as "filed" on or before October 25, 2013

when it was given to the SCF legal mail system and mailed to the Court through the United States Postal Service. *See Price,* 420 F. 3d at 1165 . Thus, Plaintiff's Complaint was filed prior to the expiration of the two year statute of limitations and the Court finds that Plaintiff's Eighth Amendment claim is not barred by the applicable statute of limitations.

### D.    Qualified Immunity

Defendants seek qualified immunity with regard to claims asserted against them in their individual capacities. *Motion* [#24] at 13-14. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity offers protection both from trial and the other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim. *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Here the Court will first analyze whether Plaintiff sufficiently alleges a constitutional

violation with regard to each of his claims against the remaining Defendants.  If Plaintiff's allegations against any remaining Defendant do not allege a constitutional violation, the Court need not continue to the second part of the analysis.

### 1.    Eighth Amendment Claims

Prison officials violate the Eighth Amendment when they use force "maliciously and sadistically" in order to cause harm, regardless of whether the inmate suffered any injury. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id.*  To be sure, not every "push or shove" by a prison guard amounts to a constitutional violation.  *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989).  A minor use of force may be de minimis if it "is not of the sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The Court's analysis of Plaintiff's excessive force claim includes both an objective and a subjective component.  *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).  First, the Court considers whether the alleged force "was objectively harmful enough to establish a constitutional violation."  *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2002) (citation omitted).  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above de minimis uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9-10 (citations omitted).  While the presence of an injury is not required, presence or absence of an injury is a factor in the determination of whether Defendants' conduct constituted an objectively serious use of force.  *See Northington v.*

-20-

*Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "significant physical injury" is not required, but "[t]he extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain").

Second, as to the subjective component, the Court considers whether the Defendants intended harm, i.e. whether they acted "maliciously and sadistically." *See Hudson*, 503 U.S. at 9. Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain and restore discipline or maliciously and sadistically" to cause harm. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quoting *Whitley*, 475 U.S. at 320-21). The subjective element can only be shown through allegations indicating that the Defendants acted with a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hudson*, 503 U.S. at 8.

In the context of the Eighth Amendment,[8] the Tenth Circuit held that a corrections

---

[8] The Supreme Court has held that the use of excessive force by law enforcement officers in the course of an arrest, investigatory stop, or other seizure should be analyzed under the Fourth Amendment "reasonableness" standard, rather than the more generalized notion of "substantive due process" because the Fourth Amendment provides an explicit textual source of protection against physically intrusive government conduct. *Graham,* 490 U.S. at 395. The Court further noted that "our cases have not resolved the question of whether the Fourth Amendment continues to provide individuals with protection against . . . excessive physical force beyond the point at which arrest ends and pretrial detention begins" and it is clear "that the Due Process clause protects a pretrial detainee from the use of excessive force that amounts to punishment . . . . After conviction, the Eighth Amendment serves as the primary source of substantive protection . . . where the deliberate use of force is challenged as excessive and unjustified." *Id.* at 395 n. 10. Further, any protection afforded by substantive due process to convicted prisoners against excessive force is at best redundant of that provided by the Eighth Amendment. *Id.* (citing *Whitley,* 475 U.S. at 327). However, because the analyses are analogous, the Tenth Circuit's discussion of an excessive force claim brought under the Fourth Amendment based on allegedly tight handcuffs is helpful to note.

Regarding tight handcuffing, in the Fourth Amendment context, the Tenth Circuit has held that "unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). In *Cortez*, the record revealed little actual injury: the only evidence in the

officer did not use excessive force in violation of the Eighth Amendment where he handcuffed a prisoner after the prisoner verbally threatened him by telling the officer to "try and stop him" from using the recreation yard. *Stanton v. Furlong,* 73 F. App'x 332, 334 (10th Cir. 2003). There, the prisoner complained that his handcuffs were too tight while being escorted to the shift commander's office and a subsequent medical examination revealed two abrasions and a slight edema, which was the type of *minor trauma* consistent with the use of handcuffs as indicated by the record. *Id.* On appeal, the court found that the district court had correctly analyzed the excessive force claim by noting the evident security purpose for which the handcuffs were used, and the relatively minor indicia of trauma found by the medical examination. *Id.*

### a.    Defendant Coons

Here, Plaintiff alleges that Defendant Coons used excessive force when he handcuffed Plaintiff after a series of alleged events. *Am. Compl.* [#9] at 8. According to Plaintiff, he asked Defendant Coons if he could use the bathroom while working at his job in the kitchen at SCF and then asked another prison official, who agreed to escort him. *Id.* On the way to the bathroom Plaintiff was approached by Defendant Coons and told to go back to the dining hall and to "stop playing staff against each other." *Id.* Plaintiff then asked another officer to escort him to the bathroom, and while being escorted back from the

---

record was plaintiff's affidavit that "the handcuffs left red marks that were visible for days afterward." 478 F. 3d at 1129. The Tenth Circuit held that to be "insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified." *Id.* In a case applying the *Cortez* standard, the court concluded that qualified immunity was correctly denied where defendant officers applied the plaintiff's handcuffs tightly, the plaintiff complained several times that he was in pain and his handcuffs were too tight, and the plaintiff presented evidence that he suffered *permanent, actual injury* because of the handcuffing (his neurologist diagnosed permanent nerve injury in his wrist, and the pain in his wrists had not subsided since the arrest). *Vondrak v. City of Las Cruces,* 535 F. 3d 1198, 1209 (10th Cir. 2008).

bathroom by that officer, Defendant Coons approached Plaintiff and said "I told you to stop playing staff against each other, now cuff up!" *Id.*   Plaintiff further alleges:

> The [P]laintiff told Defendant Coons that his right wrist was fused from being injured in the Army, could not bend, and that handcuffs needed to be placed above the wrist protrusion to avoid unnecessary pain. Defendant Coons then applied the handcuffs to Plaintiff's left wrist properly, but purposely squeezed the other cuff to his right wrist directly where the Plaintiff's injury was. The cuff was squeezed and locked so tightly that the Plaintiff's skin was actually drawn up into the teeth of the cuff, and Plaintiff cried out in pain immediately. The Plaintiff yelled, "It feels like you're breaking my wrist!" Defendant Coons squeezed the right cuff with unnecessary force solely to cause Mr. Perrian pain and harm - the force was applied with malicious and sadistic intent.

*Id.* Plaintiff alleges that Defendant Coons responded by telling Plaintiff to "shut-up" and that both Defendant Coons and Defendant Brown "slammed Plaintiff up against the wall, leaning their entire body-weight against the Plaintiff while wrenching his right wrist painfully upward to harm [Plaintiff] more." *Id.* at 9.   Plaintiff again cried out, saying "you're breaking my wrist!" and Defendant Coons said "shut up or I'll put you on the floor." *Id.*   Then, an unnamed prison supervisor allegedly told Defendants to loosen the cuff on Plaintiff's right wrist and when Defendants applied a second set of cuffs above the first in order to remove the first set they allegedly "wrenched [Plaintiff's] arms up and together with even greater force causing even more pressure and pain to . . . Plaintiff's right wrist and shoulders." *Id.* According to Plaintiff, a subsequent medical examination revealed that Plaintiff's right wrist was bleeding where the first set of cuffs had been applied, the nurse treated Plaintiff's wrist, and he was sent back to the kitchen to work. *Id.*   The CDOC "Clinical Services Anatomical Form"[9] attached to Plaintiff's Amended Complaint [#9] states that Plaintiff was examined

---

[9]   When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

on the date of the incident, and lists as an injury "small open area to R inner wrist." *Id.* at

26. Under "comments" the form states: "only did anatomical of R wrist per Shift

Commander - I/m [inmate] states it is swollen; no swelling notice [sic]." *Id.*

The Supreme Court has recently rejected the notion that significant injury is a

threshold requirement for stating an excessive force claim. *Wilkins v. Gaddy,* 559 U.S. 34,

37 (2010) (overturning the Fourth Circuit's decision to dismiss a prisoner's excessive force

claim based entirely on its determination that his injuries were "de minimis"). However, "the

extent of injury suffered by an inmate is one factor that may suggest 'whether the use of

force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting

*Hudson*, 503 U.S. at 7). In *Wilkins*, the Supreme Court reversed the dismissal of an

excessive force claim in which the plaintiff prisoner alleged that defendant corrections

officer slammed plaintiff onto a concrete floor, then proceeded to punch, kick, knee and

choke the plaintiff without provocation. 559 U.S. at 35. The Court made clear that the core

judicial inquiry in an Eighth Amendment excessive force claim is not whether a certain

quantum of injury was sustained, but rather "whether the force was applied in a good faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

---

The Court may consider documents outside of the complaint on a motion to dismiss in three instances, however. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court has examined the Clinical Services Anatomical Form attached to Plaintiff's Amended Complaint [#9]. Plaintiff refers to the form in his complaint, and it is central to the claim Plaintiff makes about the alleged use of excessive force and the resulting injuries. Accordingly, it may appropriately be considered by the Court in its consideration of the Motion.

at 37. (citations omitted).  The Court explained:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth
> Amendment inquiry. [*Hudson,* 503 U.S.] at 7.  "[T]he extent of injury suffered
> by an inmate is one factor that may suggest 'whether the use of force could
> plausibly have been thought necessary' in a particular situation." [*Id.*] (quoting
> *Whitley,* 475 U.S. at 321).  The extent of injury may also provide some
> indication of the amount of force applied.  As we stated in *Hudson,* not "every
> malevolent touch by a prison guard gives rise to a federal cause of action."
> 503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual'
> punishments necessarily excludes from constitutional recognition de minimis
> uses of physical force, provided that the use of force is not of a sort repugnant
> to the conscience of mankind."  *Id.* (internal quotation marks omitted).  An
> inmate who complains of a "push or shove" that causes no discernible injury
> almost certainly fails to state a valid excessive force claim.  *Id.* (quoting
> *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

*Id.* at 37-38.

Thus, regarding the subjective prong of the Eighth Amendment inquiry, the Court must consider whether Defendant Coons acted in an effort to maintain or restore discipline or maliciously and sadistically to cause harm. The Tenth Circuit has interpreted this to mean that courts must look to the circumstances surrounding the use of force: "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Green v. Denning,* 465 F. App'x 804, 807 (10th Cir. 2012) (unpublished decision) (noting that where the prisoner had exhibited erratic behavior, was outside of his cell, and refused to return, the circumstances justified the decision to bring him to the ground); *see also Freeman v. Woolston,* No.11-cv-01756-DME-MJW,  2013 WL 1283813 (J. Ebel, writing for the district court, looking to circumstances indicating that the defendants assaulted the prisoner without any

provocation and concluding that the prisoner's excessive force claim should survive summary judgment). While the absence of significant injury does not end the inquiry, a court may still dismiss a plaintiff's claim where the plaintiff fails to allege sufficient facts to show that a wrongdoing was objectively harmful enough to establish a constitutional violation even where the allegations may satisfy the subjective prong of the inquiry. *Marshall v. Milyard,* 415 F. App'x 850, 852 (10th Cir. 2011) (unpublished decision) (finding that the force allegedly used against the plaintiff was de minimis and not of a nature that was repugnant to mankind where a prisoner alleged that he 1) was told to lock down in his cell, 2) questioned the prison guard but began walking toward his cell, 3) the prison guard grabbed his arm forcefully, put him in handcuffs, and dug his fingernails into the prisoner's arm, and 4) the prisoner suffered a large bruise as indicated by a medical form).  "An action by a prison guard may be malevolent but not amount to cruel and unusual punishment." *Id.*

Regarding the objective part of the Eighth Amendment inquiry, as the Supreme Court made clear in *Wilkins*, the injury sustained is relevant to the analysis.  559 U.S. at 37-38; *Denning*, 465 F.App'x at  807  ("The extent of an inmate's injury is one factor in that analysis").  Here, even if all the facts alleged by Plaintiff are true, the Court cannot conclude that the force used "was objectively harmful enough to establish a constitutional violation," *Smith,* 339 F.3d at 1212.  While Plaintiff does allege that he sustained a cut on his right wrist, this injury, particularly in light of the medical examination record attached to Plaintiff's Amended Complaint, does not show that the use of force by Defendant Coons rises above a de minimis use of force so as to be sufficiently grave to form the basis of a constitutional violation. *See Hudson*, 503 U.S. at 9-10; *Marshall*, 415 F. App'x at 853 (affirming dismissal

of excessive force claim and noting that "[t]he medical form shows only areas of redness

and bruising"). Further, the Clinical Services form notes that while Plaintiff allegedly stated

that his wrist was swollen, no swelling was noticeable to the examiner. *See Am. Compl.*

[#9] at 26. This is similar to *Marshall* where the Tenth Circuit concluded that an allegation

that a prison official grabbed and dug his fingernails into a prisoner's arm, resulting in an

injury, did not violate the Eighth Amemdent. 415 F.App'x at 853 ("The force allegedly used

against [the plaintiff] was both de minimus and not of a nature that is repugnant to

mankind"). In that case, the Tenth Circuit looked to other circuits' determinations on

excessive force in support of its own finding:

> Our conclusion is bolstered by our sister circuits' decisions considering comparable, or even greater, uses of force. *In De Walt v. Carter*, 224 F.3d 607, 610-11 (7th Cir. 2000), a prisoner alleged that an officer shoved him into a doorframe after the prisoner called him unprofessional. The prisoner suffered bruising on his back. *Id.* at 611. The court held that the force used was de minimus and insufficient to support an Eighth Amendment claim. *Id.* at 620. Another court held that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Lunsford v. Bennett*, 17 F.3d 1574, 1578, 1582 (7th Cir. 1994) (hitting prisoner in the head with a bucket, causing daily headaches, was minor use of force insufficient to establish constitutional violation); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F.Supp. 148, 149–50 (D.Kan.1992) (single blow to prisoner's head while escorting him into prison, causing contusion, was a de minimis use of force not repugnant to the conscience of mankind).

*Id.* Ultimately, the Tenth Circuit concluded that "Mr. Marshall's allegations of de minimis

force simply fall short of what is required to establish a constitutional violation." *Id.* at 854.

In the instant case, Plaintiff alleges that after he was treated, he went back to the

kitchen to work. *Id.* at 9. The Court can accordingly infer that while Plaintiff may have

indeed suffered a cut on his right wrist, the injury was not severe enough to produce any

swelling or to prevent him from immediately returning to his work.  The objective harm alleged here is similar to the *Stanton* case in which the Tenth Circuit affirmed the district court's conclusion that the use of force was not excessive based on tight handcuffs where a subsequent medical examination revealed only minor trauma including two abrasions and an edema.  73 F. App'x at 334.  It is also similar to the *Marshall* case because the medical form attached to the Complaint stated that there was no swelling.  *See Am. Compl.* [#9] at 26;  415 F.App'x at 853.  Further, Plaintiff fails to allege any lasting injury as a result of this use of force, and does not allege any long-term pain associated with the tight handcuffs or any loss of ability to use his right wrist or hand after this incident.  *See generally Am. Compl.*

Taking the facts alleged in the light most favorable to the Plaintiff, the force used by Defendant Coons does not appear to have been applied in a good faith effort to maintain or restore discipline in light of the circumstances.  Plaintiff's allegations assert that while Defendant Coons had directed Plaintiff to return to the dining hall once while Plaintiff was trying to use the bathroom, two other correctional officers, Officer Leonard and Officer Wiederstein, were willing to escort Plaintiff to the bathroom.  *Am. Compl.* [#9] at 8.  Further, when the incident with Defendant Coons allegedly occurred, Plaintiff was returning from the bathroom, escorted by Officer Wiederstien.  *Id.*  If, as Plaintiff alleges, he was returning *from* the bathroom, it is unclear why Defendant Coons handcuffed Plaintiff at all; the only reasonable use of handcuffs that may be inferred here would be if Defendant Coons' goal was to prevent Plaintiff from leaving to go to the bathroom, as indicated by his earlier statement denying Plaintiff permission to use the bathroom.  Further, Plaintiff alleges that when he informed Defendant Coons that his right wrist had been injured, Defendant Coons

proceeded to apply the right handcuff very tightly, and both times when Plaintiff cried out in pain, Defendant Coons told Plaintiff to "shut-up". *Id.* at 8-9. These alleged circumstances taken together suggest that Defendant Coons acted malevolently, rather than in a good-faith effort to maintain or restore discipline.[10] However, even if Defendant Coons acted with a sufficiently culpable state of mind under the subjective prong of the Eighth Amendment analysis, Plaintiff's claim fails because under the objective prong, the force alleged here is de minimis and does not rise to the level of a constitutional violation. *See Saleh v. United States,* No. 09-cv-02563-PAB-KLM, 2011 WL 2682728 at *6 (D. Colo. 2011) (finding that even if the prison officer acted malevolently by pulling the prisoner's arms behind his back, causing him severe back pain, the force was both de minimis and not of a nature repugnant to mankind) (citing *Marshall,* 415 F. App'x at 852). Thus, while the facts alleged by Plaintiff tend to show that Defendant Coons acted with a malevolent state of mind, rather than in a good faith attempt to maintain or restore discipline, the Court finds that Plaintiff has failed to state a claim pursuant to the Eighth Amendment because the objective harm alleged does not rise to the level of a constitutional violation. *See Marshall,* 415 F. App'x at 852.

Therefore, the Motion [#24] is **granted** to the extent it seeks dismissal of the claims against Defendant Coons in his individual capacity for violating Plaintiff's Eighth Amendment rights, and the Eighth Amendment claim against Defendant Coons in his

---

[10]   Plaintiff also alleges in his description of the events that "the force was applied [by Defendants] with a malicious and sadistic intent." This is a conclusory allegation that the Court cannot credit. *Iqbal*, 556 U.S. at 677 (2009) ("[A] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. . .") Accordingly, the Court relies not upon conclusory allegations by the Plaintiff that Defendants acted with a malicious and sadistic intent, but rather looks to the circumstances alleged that indicate that the Defendants acted with a sufficiently culpable state of mind. *See Farmer,* 511 U.S. at 837.

individual capacity is accordingly **dismissed without prejudice.**[11]  Because the Court finds

that Plaintiff has failed to state a constitutional violation against Defendant Coons, the Court

need not address the remaining part of the qualified immunity test.

> **b.    Defendant Brown**

The Court likewise concludes that Plaintiff has failed to state a claim pursuant to the

Eighth Amendment against Defendant Brown. Plaintiff does not allege that Defendant

Brown participated in the allegedly forceful and unnecessary handcuffing with Defendant

Coons. *See Am. Compl.* [#9] at 8.  Plaintiff only alleges that Defendant Brown participated

in "slamm[ing] . . . Plaintiff up against the wall," and does not allege that Defendant Brown

told Plaintiff to "shut up" in response to his cries of pain.  *Id.* at 9.  In fact, the allegations

in which Defendant Brown is mentioned are those pertaining to removal of the first set of

tight cuffs and escorting Plaintiff to the medical center.  *Id.*  While it may have been

unnecessary to push Plaintiff up against the wall, "not every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights." *Hudson*, 503 U.S. at 9. Further, the injury alleged by Plaintiff, the pain

in his wrist and the resulting cut, are alleged to stem from the tight handcuffs applied by

Defendant Coons, not from the subsequent shove by both Defendants, or their actions in

---

[11]  The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial.  *Brierly, v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983).  However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).  Here, it is possible that the claim against Defendant Coons pursuant to the Eighth Amendment could raise substantial issues upon further investigation and development, and thus prejudice should not attach to the dismissal. *See Reynoldson v. Shillinger,* 907 F. 2d 124, 127 (10th Cir. 1990).

removing the first set of cuffs and escorting Plaintiff to the medical center. *See Am. Compl.* [#9] at 8-9.   Regarding the subjective requirement in particular, Plaintiff has not made any allegations to show that Defendant Brown acted with malicious intent.  *See id.* The allegations that most clearly indicate malicious intent during this incident, forcefully handcuffing the plaintiff without need or provocation and telling the plaintiff to "shut up" in response to his cries of pain, are made against Defendant Coons, not Defendant Brown. *Id.* at 8- 9.  Accordingly, the Court concludes that Plaintiff has failed to state a claim against Defendant Brown pursuant to the Eighth Amendment because he has not alleged that Defendant Brown used force maliciously and sadistically to cause harm.  *See Hudson*, 503 U.S. at 9.  Therefore, the Court **grants** the Motion [#24] to the extent it seeks dismissal of the Eighth Amendment claim against Defendant Brown in his individual capacity, and the Eighth Amendment claim against Defendant Brown in his individual capacity is **dismissed without prejudice.**[12]   Because the Court finds that Plaintiff has failed to state a constitutional violation against Defendant Brown, the Court need not address the remaining part of the qualified immunity test.

### c.   Defendant Graham

As noted above, personal participation is an essential allegation in a civil rights action.  *See Bennett*, 545 F.2d at 1262-63.  To establish personal participation, a plaintiff

---

[12]   The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial.  *Brierly*, 781 F.2d 838.  However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine*, 241 F.3d at 1275. Here, because it is possible that the claim against Defendant Brown could raise substantial issues upon further investigation and development, prejudice should not attach to the dismissal. *See Reynoldson*, 907 F. 2d at 127.

must show that each defendant caused the deprivation of a federal right.  *See Graham*, 473 U.S. at 166.  A supervisory official may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior.  *See Iqbal*, 556 U.S. at 676.  Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Richardson,* 614 F. 3d at 1199.  The Tenth Circuit has recently reiterated that "personal participation in a violation of a plaintiff's constitutional rights is an essential allegation in a Section 1983 claim," and that "denial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation."   *Sherratt,* 545 F. App'x at 747 (citations omitted) (holding that the district court properly dismissed plaintiff's claims against individual defendants charged in their supervisory capacities); *see also Gallagher v. Shelton,* 587 F. 3d 1063, 1069 (10th Cir. 2009).

After the incident described above in which Defendants Coons and Brown allegedly violated Plaintiff's Eighth Amendment rights, Plaintiff allegedly filed a grievance complaining of excessive use of force, but maintains that it was denied.  *Am. Compl.* [#9] at 9.  Plaintiff allegedly "wrote a letter to officials in CDOC central headquarters. But no official action was taken by CDOC."  *Id.*  Plaintiff alleges that "the CDOC has never conducted any kind of investigation of the excessive use of force, though CDOC policy dictates that excessive use

of force complaints 'shall be subject to the immediate attention of administrative heads and the Director of Prisons' [sic] as well as the office of the Inspector General [AR 1150-04(IV)(E)]"   *Id.*   The entirety of the allegations that refer to Defendant Graham are as follows:

> As a result of the above grievances and letter, Defendant Larry Graham (an investigator in the CDOC Office of the Inspector General) was told to investigate the use of force claim. However, the Defendant never actually conducted an official investigation. He never attempted to ascertain the truth of [Plaintiff's] claims, never spoke to the Plaintiff concerning the use of force, and did nothing to preserve any evidence (such as the video) relating to the use of force by Defendants Coons and Brown. Through these actions Defendant Graham intentionally covered up the excessive use of force. This was meant to maintain an unwritten policy in the SCF of not holding correctional officers accountable for their excessive application of force against inmates. In this way, Defendant Graham was just as accountable as Defendants Coons and Brown for the violation of [Plaintiff's] Eighth Amendment rights.

*Id.* at 10.   Plaintiff alleges that Defendant Graham failed to properly investigate or process the grievances filed by Plaintiff, and Plaintiff seeks to establish liability of Defendant Graham for the underlying conduct, the alleged use of excessive force, in this way. This kind of allegation falls squarely within the holding of *Sherratt,* and thus is not sufficient to establish personal participation for the purposes of a § 1983 claim.  545 F. App'x at 747.

Further, while Plaintiff alleges that Defendant Graham's actions were "meant to maintain an unwritten policy in the SCF of not holding correctional officers accountable for their excessive application of force against inmates," this is a conclusory allegation that the Court cannot credit without allegations of other acts or circumstances that would demonstrate the existence of such a policy.  As noted above, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do . . ."   *Iqbal*, 556 U.S. at 677. Thus, while Plaintiff alleges, albeit in a conclusory

-33-

fashion, that Defendant Graham's lack of action *maintained* a policy that may have sanctioned allegedly unconstitutional conduct, Plaintiff fails to allege that Defendant Graham "promulgated, created, implemented or possessed responsibility for the continued operation of [that] policy." *Richardson,* 614 F. 3d at 1199. Plaintiff also fails to allege that the policy actually caused the harm complained of, or that Defendant Graham acted with a culpable state of mind required to established the alleged constitutional deprivation. *See id.* Thus, the Court concludes that Plaintiff fails to state a claim on which relief can be granted pursuant to the Eighth Amendment against Defendant Graham and **grants** the Motion [#24] to the extent it seeks dismissal of the Eighth Amendment claim against Defendant Graham in his individual capacity. Accordingly, the Eighth Amendment claim against Defendant Graham in his individual capacity is **dismissed without prejudice**.[13] Because the Court finds that Plaintiff has failed to sufficiently allege a constitutional violation against Defendant Graham, the Court need not address the remaining part of the qualified immunity test.

## 2. First Amendment Claims

The First Amendment prohibits prison officials from retaliating against inmates for exercising their right to participate in the prison grievance process. *Rogers v. Garcia*, No.

---

[13] As noted above, the dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial. *Brierly,* 781 F.2d 838 (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983). However, due to heightened concerns when the plaintiff is proceeding *pro se,* dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Oxendine 241 F.3d at 1275. It is possible that the claim against Defendant Graham for supervisory liability pursuant to the Eighth Amendment could raise substantial issues upon further investigation and development, and thus prejudice should not attach to the dismissal. *See Reynoldson,* 907 F. 2d at 127.

08-cv-02821-WYD-MJW, 2010 WL 3547432, at *5 (D. Colo. Sept. 3, 2010) (citing *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)).  Retaliatory acts under 42 U.S.C. § 1983 include acts that would otherwise be permissible if they were not conducted in retaliation.  *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005) (citing *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990)); *Maschner*, 899 F.2d at 948.  For example, prison officials cannot terminate inmates from their jobs in retaliation for participating in the prison grievance process.  *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (citing *Frazier*, 922 F.2d at 561-62).

Inmates alleging retaliation bear a "substantial burden."  *Kan. Penn Gaming, LLC*, 656 F.3d at 1217 (quoting *Jicarilla*, 440 F.3d at 1212) (further citation omitted).  They must allege:

> (1) that plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Mimics*, 394 F.3d at 847 (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted)).

### a.    Defendant Chapdelaine

The first element the Court considers is whether Plaintiff "was engaged in constitutionally protected activity."  *See Mimics*, 394 F.3d at 847.  Plaintiff alleges that after the incident involving Defendants Coons and Brown, he filed a grievance on October 26, 2011, he sent a letter to the supervisor of security at SCF requesting that the video recording of the incident be preserved for future investigation, and that he also sent a letter

to the Americans with Disabilities Act Inmate Coordinator asking for assistance in bringing charges against Defendants Coons and Brown for the use of excessive force. *Am. Compl.* [#9] at 10-11.  He alleges that the matter was then turned over to Defendants Chapdelaine and Usry, and that Defendant Chapdelaine responded by "e-mailing Defendant Henderson and ordering him to file COPD charges on the Plaintiff."  *Id.*  As noted above, COPD charges for "False Reporting to Authorities" were eventually filed against Plaintiff, and after a hearing board found Plaintiff guilty of the charges, Plaintiff was sentenced to twenty days of punitive segregation and thirty days loss of good time. *Id.* at 12.  Plaintiff further alleges that as a result of the segregation he lost his job in the kitchen, and that upon completing his punitive segregation he was placed in the "Intensive Management Program," where job-related and other opportunities are severely limited. *Id.* at 12.  He alleges that Defendant Chapdelaine's actions were "direct retaliation against [Plaintiff] for exercising his First Amendment right of Free Speech and petition for redress of grievances." *Id.* at 11.

The right of access to the courts is a constitutionally protected right, and that right encompasses access to the prison grievance process. *See, e.g.*, *Sherrat*, 545 F. App'x at 747 (citing *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006); *Maschner*, 899 F.2d at 947-48.  Accordingly, Plaintiff's use of the grievance process was protected conduct, and, therefore, satisfies the first element of a First Amendment retaliation claim.  *See Mimics*, 394 F.3d at 847.

The second element the Court considers is whether Defendant Chapdelaine's "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Id.*  "This objective inquiry is 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation

-36-

claims arise.'" *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)).  The injury alleged may be "no more tangible than a chilling effect.'" *Rogers*, 2010 WL 3547432, at *4 (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)).  Moreover, "'[s]peech can be chilled even when not completely silenced.'" *Id.* at *4 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005)).

Here, Plaintiff alleges that Defendant Chapdelaine sent an email to Defendant Henderson ordering him to file COPD charges, and that those charges eventually led to the Plaintiff being placed in segregation, losing good time credit, and losing his job in the kitchen. *See Am. Compl.* at 11-12.  If Defendant Chapdelaine did order that COPD charges be filed against the Plaintiff, leading to segregation, loss of good time, and job loss, that action "would chill a person of ordinary firmness from continuing to engage in that activity." *Poole v. Cnty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001); *see Zarska v. Higgins*, 171 Fed.Appx. 255, 259 (10th Cir. 2006), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250, 256 (2006)) ("[W]e hold that [Defendant's] alleged filing of disciplinary proceedings to retaliate for a report of misconduct 'would chill a person of ordinary firmness from continuing to engage in that activity.'").

With regard to the third factor, "it is imperative that [a] plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation *because of* the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n.1 (emphasis added); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation").  Plaintiff alleges that after he filed a

grievance and sent letters requesting the investigation of the use of force incident, the matter was turned over, in part, to Defendant Chapdelaine, who ordered Defendant Henderson to file COPD disciplinary charges against Plaintiff.  *Id.*  Plaintiff maintains that he filed his grievance on October 26, 2011, and wrote letters requesting help investigating the incident on November 1 and 16, 2011, and COPD charges were eventually filed against him on December 28, 2011.  *Id.*  Additionally, Plaintiff alleges that after the matter of the grievance and letters was turned over to Defendant Chapdelaine, Defendant responded with an email ordering Defendant Henderson to file COPD charges against the Plaintiff.  *Id.*  However, Plaintiff alleges no *facts* suggesting that the alleged email was motivated by a desire to retaliate on Defendant Chapdelaine's part, nor does Plaintiff allege that Defendant Chapdelaine's alleged email responded directly to or was specifically motivated by Plaintiff's grievance regarding the alleged excessive force incident.[14] *See Am. Compl.* [#9] at 11.  Further, the Court may dismiss a First Amendment claim for retaliation where a plaintiff only alleges that defendant arranged for a COPD charge to be filed.  *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, 2008 WL 280839 at *10 (D. Colo. 2008) ("[plaintiff] further alleges that [a defendant] retaliated against him by *arranging* for a COPD charge to be filed against him regarding an altercation with [another inmate] . . . . [Plaintiff] has not demonstrated that [the defendant] participated in this charge . . . The evidence shows that [a second defendant] filed the COPD charge against [plaintiff] and that [the first defendant]

---

[14]  Plaintiff alleges that the "actions by Defendants John Chapdelaine and Major Tim Usry [were] direct retaliation against Mr. Perrian for exercising his First Amendment right."  *Am. Compl.* [#9] at 11. However, this is a conclusory allegation that the Court cannot credit. *Iqbal*, 556 U.S. at 677 ("[A] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. . .")

did not review the charge") (emphasis added).   In this case, Plaintiff only alleges that Defendant Chapdelaine *ordered* the disciplinary charge to be filed, but did not file the COPD charge himself. *See Am. Compl.* [#9] at 11.  Thus, because Plaintiff has not sufficiently alleged that Defendant Chapdelaine actually participated in the filing of the COPD charge against Plaintiff with a retaliatory motive linked to the grievance filed by Plaintiff, Plaintiff fails to state a claim on which relief may be granted pursuant to the First Amendment against Defendant Chapdelaine. Accordingly, the Court **grants** Defendants' Motion [#24] to the extent it seeks dismissal of the First Amendment claim against Defendant Chapdelaine in his individual capacity, and the First Amendment retaliation claim against Defendant Chapdelaine is **dismissed without prejudice**.[15]   Because the Court finds that Plaintiff has failed to sufficiently allege a constitutional violation against Defendant Chapdelaine, the Court need not address the remaining part of the qualified immunity test.

### b.   Defendant Usry

Plaintiff's allegations fail to state a claim against Defendant Usry for the same reasons they fail to state a claim against Defendant Chapdelaine.  Plaintiff alleges only that the matter of Plaintiff's grievance was turned over to Defendant Usry (and Defendant Chapdelaine), that Defendant Usry "responded by advocating for [Plaintiff] to face the consequences for the complaint, and by working with Defendant Graham to cover up the excessive use of force (*see* Claim One Above)."  *Am. Compl.* [#9] at 11.  Plaintiff further alleges that "these actions by . . . [Defendant Usry] was [sic] direct retaliation against

---

[15] Prejudice should not attach to a dismissal when a plaintiff has made allegations, "which, upon further investigation and development, could raise substantial issues." *See Reynoldson,,* 907 F. 2d at 127.

[Plaintiff] for exercising his First Amendment right of Free Speech and to petition for redress of grievances." *Id.* This is a conclusory allegation that the Court cannot credit. *See Iqbal*, 556 U.S. at 677.

As discussed above, Plaintiff's allegations meet the first element of a First Amendment retaliation claim because he engaged in protected speech by filing a grievance. *See Mimics*, 394 F.3d at 847. Plaintiff's allegations meet the second element of the test because the COPD charges filed against Plaintiff and the resulting consequences "would chill a person of ordinary firmness from continuing to engage in that activity [of filing grievances]." *See Zarska*, 171 F. App'x at  259. However, Plaintiff's allegations against Defendant Usry fail to meet the third element of the test because Plaintiff has not alleged any facts to show that Defendant Usry's alleged act of "advocating for [Plaintiff] to face the consequences for the complaint" was motivated by a retaliatory motive. *Am. Compl.* [#9] at 11. *Maschner*, 899 F.2d at 949-50. Additionally, Plaintiff's allegations against Defendant Usry likewise fall within the analysis of *Baldauf* where a plaintiff alleged that a defendant had retaliated against him by "arranging for a COPD charge to be filed against him" and the court found that the plaintiff had not sufficiently alleged that the defendant had participated in the charge, and dismissed the claim.  2008 WL 280839 at *10.  Here, Plaintiff has failed to sufficiently allege that Defendant Usry acted with a retaliatory motive, or that Defendant Usry participated in the filing of the COPD charge against him, and thus has failed to state a retaliation claim pursuant to the First Amendment on which relief may be granted. Accordingly, the Court **grants** the Motion [#24] to the extent it seeks dismissal of the First Amendment claim against Defendant Usry in his individual capacity, and the First Amendment retaliation claim against Defendant Usry is

-40-

**dismissed without prejudice**.[16] Because the Court finds that Plaintiff has failed to sufficiently allege a constitutional violation against Defendant Usry, the Court need not address the remaining part of the qualified immunity test.

### c.   Defendant Henderson

As discussed above, Plaintiff's allegations meet the first element of a First Amendment Retaliation claim because he engaged in protected speech by filing a grievance. *See Mimics*, 394 F.3d at 847.  Plaintiff's allegations meet the second element of the test because the COPD charge filed against Plaintiff and the resulting consequences "would chill a person of ordinary firmness from continuing to engage in that activity [of filing grievances]." *See Zarska*, 171 F. App'x at  259. Regarding the third element of the claim, the Court considers whether Plaintiff has alleged "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144.  Plaintiff alleges that Defendant Henderson "was the person who filed COPD charges for False Reporting on the Plaintiff," and that Defendant Henderson was the "prosecuting officer" during the hearing regarding Plaintiff's COPD charge. *Am. Compl.* [#9] at 11, 12.  Plaintiff further alleges that the Notice of Charges ("Notice") containing the COPD "False Reporting to Authorities" charge alleged that Plaintiff "made false claims of excessive force by staff documented by his filings on 10-26-2011 (Grievance), 11-1-11 (to Nicholson), and to the offices at AIC on 11-4-11." *Id.* at 11. Plaintiff further alleges that the Notice "explained that the Plaintiff's 'statements [were] misleading because he was initially cuffed up and the

---

[16] Prejudice should not attach to a dismissal when a plaintiff has made allegations, "which, upon further investigation and development, could raise substantial issues." *See Reynoldson,,* 907 F. 2d at 127.

restraints were too tight. Staff then placed another set of cuffed (sic) on him in order to

loosen the first set of cuffs. Staff were taking appropriate actions to mitigate the situation

[he] calls excessive.'" *Id.* Plaintiff has attached a copy of the Notice to his Amended

Complaint, and the Notice indicates that Defendant Henderson initiated the false reporting

charge after reviewing documents concerning the Plaintiff, including the grievance filed by

Plaintiff on October 26, 2011.[17]   The "Summary" section of the Notice states that

Defendant Henderson reviewed documents concerning Plaintiff and that "[Plaintiff] made

false claims of excessive force by staff." *Id.* at 24.   The Notice states that "[Plaintiff's]

statements are misleading because . . . Staff were taking appropriate action to mitigate the

situation that [Plaintiff] calls excessive." *Id.*  The Court can accordingly infer that Defendant

Henderson reviewed Plaintiff's allegations, made a determination that those allegations

were false under the "False Reporting to Authorities" rule, and thus filed COPD charges

against the Plaintiff.[18]

---

[17]   The Court has examined the Notice attached to Plaintiff's Amended Complaint [#9]. Plaintiff refers to the Notice in his Amended Complaint, and it is central to Plaintiff's First Amendment retaliation claim against Defendant Henderson. Accordingly, it may appropriately be considered by the Court in its consideration of the Motion. *GFF Corp.,* 130 F.3d at 1384.

[18]   Boiled down to its essence, the situation alleged by Plaintiff is as follows: a prisoner who was forcibly handcuffed in the prison believed that his constitutional rights were violated, and filed a grievance against responsible staff.   Another staff member reviewed the grievance and determined that the prisoner's version of the events was incorrect and staff acted appropriately, thus the prisoner should be charged with false reporting.  In other words, the prisoner's pursuit of his constitutional rights was not processed in a manner which required the accused officials to defend themselves.  Instead, another official filed disciplinary charges against the prisoner, thus placing *him* on the defensive.  While the Court is aware that "[]p]rison administrators . . . should be accorded a wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," Bell, 441 U.S. at 547, the application of this policy as alleged by Plaintiff is extremely troubling, because it implies that a prison official sua sponte determined that Plaintiff's grievance was false and lodged charges against him without prior notice or a hearing, and in doing so shifted the process from the prisoner's accusations against prison officials to the prisoner's need to defend himself against pre-judged charges.  Nevertheless, the Court does not treat this claim as a

Further, the Court can infer from Plaintiff's allegations that Defendant Henderson's decision to file COPD charges was motivated at least in part by a desire to retaliate against Plaintiff for filing a grievance. While Plaintiff must allege that "but for [Defendant Henderson's] retaliatory motive, the incidents to which he refers . . . would not have taken place," Plaintiff may support his allegations by the only means available to him, including "circumstantial evidence of the suspicious timing of his discipline." *Maschner*, 899 F.2d at 949-50 (10th Cir. 1990).   Plaintiff can establish a retaliatory motive by alleging a

Fourteenth Amendment due process claim because such claim would fail based on the allegations in the Amended Complaint.

To state a Fourteenth Amendment due process claim, a plaintiff must allege facts supporting two elements. *See Veile v. Martinson*, 258 F.3d 1180, 1184-1185 (10th Cir. 2001); *Sarno*, 2013 WL 1151818, at *6-7; *Obando v. Zavares*, 2012 WL 5878209, at *18 (D. Colo. Oct. 30, 2012). First, he must allege that he possesses a protected liberty or property interest. *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7. Second, he must allege that he was not afforded the appropriate level of process. *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7.

Here, Plaintiff fails to plead facts sufficient to meet the second prong—that he was not afforded the appropriate level of process. "The Supreme Court has indicated that adequate inmate grievance procedures alone may provide a meaningful postdeprivation remedy for purposes of procedural due process." *Klein v. McClaury*, 221 F.3d 1352, at *2 (10th Cir. July 20, 2000) (unpublished table decision) (citing *Hudson*, 468 U.S. at 536 n.15). Plaintiff states in the Amended Complaint that a hearing regarding the false reporting charge was held on January 10, 2012, "before a panel of three hearing officers." *Am. Compl.* [#9] at 11. Plaintiff further alleges that he and Defendant Henderson offered testimony at the hearing and that he was allowed to present a medical report to the hearing board. *Id.* at 11-12. Finally, Plaintiff alleges that "[a]t the conclusion of the hearing, the Board voted two to one to find [ ] Plaintiff guilty of False Reporting." *Id.* at 12. Therefore, Plaintiff's "own pleading acknowledges that he has what the courts have determined to be an adequate post-deprivation remedy available to him through the prison grievance system." *Tena v. Linza*, No. 12-cv-03215-MSK-CBS, 2014 WL 1154183, at *6 (D. Colo. Mar. 13, 2014). While Plaintiff disagrees with the hearing board's decision, the outcome "in no way affects the procedure's adequacy as a post-deprivation remedy." *Austin v. Lehman*, 893 F.Supp. 448, 454 n.4 (E.D. Pa. 1995) (citing *Jackson v. Central New Mexico Corr. Facility*, 976 F.2d 740, (10th Cir. 1992) (unpublished table decision) ("The fact that Plaintiff did not receive the result he desired from the [prison] grievance procedure does not mean that he was denied due process.") and *Abbott v. Jackson*, No. 86 Civ. 7225, 1988 WL 26993, at *1 (E.D. Pa. Mar. 16, 1988) (prison authorities' unfavorable decision on inmate's grievance is not itself a denial of due process)); *Morales v. Beard*, Civ. A. No. 09-162, 2009 WL 2413425 (W.D. Pa. July 31, 2009) ("failure of prison officials to provide what the inmate deems to be a favorable response to a grievance does not demonstrate that the process was inadequate or constitutionally deficient.").

"chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith,* 60 F. 3d 1161, 1166 (5th Cir. 1995); *see also Maschner*, 899 F.2d at 949. In *Maschner,* the Tenth Circuit held that circumstantial evidence alone was sufficient to establish the possibility of a retaliatory motive where the plaintiff appeared in court for a hearing in his litigation against the prison and then *immediately* upon his return to prison was placed in administrative segregation and informed of four disciplinary charges filed against him that day. *Maschner*, 899 F.2d 940 at 945, 950. In this case, Plaintiff filed his grievance about the alleged excessive force incident on October 26, 2011, and disciplinary charges were not filed against him until December 28, 2011. *Am. Compl.* [#9] at 10-11. A significant time period between the protected activity and the adverse conduct can defeat an inference that the adverse conduct was motivated by retaliatory intent. *See Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d 1259, 1262 (10th Cir. 1994) (holding that "[n]o such inference [of retaliatory motive] can be made where the relevant charges preceded the employer's adverse action by as much as three years"); *Stover v. Martinez,* 382 F.3d 1064, 1074 (10th Cir. 2004) (holding that a "lapse of over two years" between the protected activity and the adverse action "is too attenuated to support an inference of causation" on a retaliation claim). However, a shorter amount of time, such as one and a half months, between the protected activity and the adverse conduct may constitute sufficient circumstantial evidence to allege retaliatory intent. *See Ramirez v. Oklahoma Dep't of Mental Health,* 41 F. 3d 584, 596 (10th Cir. 1994). Here, a little over two months after Plaintiff first initiated use of the grievance system against Defendants, he suffered the adverse action of COPD False Reporting charges and eventual placement in segregation. The Court finds that Plaintiff has sufficiently "allege[d] a chronology of events from which

retaliation may plausibly be inferred." *Quintana v. Edmond,* No. 06-cv-01187-WDM-KLM, 2008 WL 3539265 at *11 (D. Colo. 2008) (quoting *Woods v. Smith,* 60 F. 3d 1161, 1166 (5th Cir. 1995)).

In *Quintana,* the court found that the plaintiff had set forth sufficient evidence to support an inference that defendants took disciplinary action against him based at least in part on improper motives even where it was disputed whether plaintiff could prove that defendants knew of the grievances he had filed. *See Quintana,* 2008 WL 3539265 at *12. Here, it is clear that Defendant Henderson knew of the October 26, 2011 grievance filed by Plaintiff because the grievance is listed on the Notice, and the COPD False Reporting charge is *based on* the information Plaintiff provided in his grievance. *See Am. Compl.* [#9] at 24, 11. Thus, the Court concludes that while Plaintiff has made only circumstantial allegations showing that Defendant Henderson acted with a retaliatory motive by filing COPD charges against Plaintiff, Plaintiff states a claim on which relief can be granted pursuant to the First Amendment for retaliation.

Since "a [constitutional] violation [by Defendant Henderson] could be made out on a favorable view of [Plaintiff's] submissions," the second part of the qualified immunity inquiry is "to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Id.* at 202. In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other Circuits must establish the constitutional right. *Medina v. City and Cnty. of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). In other words,

there must be case law in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard Cnty.,* 494 F.3d 891, 903 (10th Cir.2007). The Supreme Court has reaffirmed that while a constitutional violation must be found on similar conduct, officials can still be on notice that their conduct violates established law even in novel factual circumstances. *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). "Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* "General statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply . . . to the conduct in question even though the very action in question has not previously been found unlawful." *Id.* (Internal citation and quotations omitted).

It is well established that the right of access to the courts is a constitutionally protected right, and that right encompasses access to the prison grievance process. *See, e.g.*, *Sherrat*, 545 F. App'x at 747 (citing *Fogle*, 435 F.3d at 1264); *Maschner*, 899 F.2d at 947-48. It is further established that the First Amendment prohibits prison officials from retaliating against inmates for exercising their right to participate in the prison grievance process and access the courts. *See Green v. Johnson*, 977 F.2d at 1389; *Frazier*, 922 F.2d at 562; *Maschner*, 899 F.2d at 947. The clear holding of the Tenth Circuit in *Maschner* was that circumstantial evidence indicating a retaliatory motive by defendant prison officials in taking disciplinary action against the plaintiff was enough to preclude summary judgment on plaintiff's First Amendment retaliation claim. 899 F.2d at 949. The court recognized that "precisely because the ultimate fact of retaliation turns on defendants'

state of mind, it is particularly difficult to establish by direct evidence." *Id.* Accordingly, the Court concludes that because the Tenth Circuit has long announced and reaffirmed clear statements of the law and constitutional rules encompassing Defendant Henderson's conduct here, it would be clear to a reasonable officer in Defendant Henderson's position that his conduct was unlawful in the situation he confronted. *See Saucier,* 553 U.S. at 201.

Defendants raise the issue of injunctive relief in the Motion [#24], arguing that "Plaintiff's request for injunction (sic) relief relating to the disciplinary charge of False Reporting under the COPD has been rendered moot." *Motion* [#24] at 11. Defendants argue that because "On March 15, 2014, the Executive Director of the CDOC, Rick Raemisch placed into effect the most recent version of the COPD, Administrative Regulation 150-01 . . . [a] charge for False Report (sic) to the Authorities is no longer a charge under the COPD," and thus any injunctive relief sought by Plaintiff relating to the charge of false reporting has been rendered moot. *Id.* at 12. The Court notes that the version of the COPD currently in effect does not list a charge of False Reporting. *See* CDOC Administrative Regulation ("AR") No. 150-01.[19] Part of the remedy requested by Plaintiff is "[a] preliminary and permanent injunction ordering the defendant's (sic) to stop charging inmates with False Reporting in retaliation for filing grievance complaints against prison officials." *Am. Compl.* [#9] at 14.

"Mootness decisions are concerned in large part with the determination whether any

---

[19] The Court may take judicial notice of agency rules and regulations. *Ray v. Aztec Well Service Co.,* 748 F. 2d 888, 889 (10th Cir. 1984). Thus, the Court may take notice of CDOC Administrative Regulations. *See Barksdale v. Connaghan,* No. 10-cv-02491-CMA-CBS, 2012 WL 6770883 at *8 (D. Colo. 2012); *Muniz v. Kaspar,* No. 07-cv-019414-MSK-MJW, 2008 WL 3539270 at *3 (D. Colo 2008).

effective purpose can still be served by a *specific remedy*." *Jordan v. Sosa,* 654 F. 3d 1012, 1024 (10th Cir. 2011) (citation and quotation omitted). Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—"[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-496 (1974)).  A claim for injunctive relief is no longer live when "the explicit objective of the proposed injunction has been met."  *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995).  In this case, Plaintiff's request for injunctive relief has become moot as a result of the change in the CDOC COPD rules, which no longer include a charge for False Reporting to Authorities.  Thus, the Court cannot grant the injunctive relief Plaintiff seeks, which is to order "[D]efendant's [sic] . . . to stop charging inmates with False Reporting in retaliation for filing [a] grievance." *Am. Compl.*  [#9] at 14. "When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot."  *Abdulhaseeb v. Calbone*, 600 F. 3d 1301, 1311 (10th Cir. 2010).

In his Response, Plaintiff argues that where prison authorities have voluntarily changed a policy, the Court is not deprived of its power to hear the case. *Response* [#28] at 9.  Further, Plaintiff asserts that there is a chance the alleged harm will recur because he "fears he will be charged with '[f]raud or [f]orgery' which is similarly worded to the old False Reporting charge: both deal with intent to deceive or misleading statements." *Id.*  "It is well-settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Here, the voluntary policy change only serves to moot Plaintiff's claim if the

Defendants can satisfy the "heavy burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Saleh v. BOP*, No. 05-cv-02467-PAB-KLM, 2009 WL 3158120, at *6 (D. Colo. Sept. 29, 2009) (internal quotation marks and citation omitted). As noted above, Defendants provided the CDOC Administrative Regulations effective as of March 15, 2014. *See generally Motion, Ex. A* [#24-1]. Under the current version of the Administrative Regulations, fraud is defined as follows:

> **_Fraud_**: An offender commits this offense when he/she:
> (a) Through deception, trickery, or false claims, attains anything for personal gain or benefit; or,
> (b) Alters, destroys, conceals, or removes anything with intent to impair its authenticity or availability; or,
> (c) Presents or uses anything which he/she knows to be false with intent to deceive.

*Motion, Ex. A* [#24-1] at 10. The factual situation alleged by Plaintiff regarding his charge of false reporting would not fall into either (a) or (b). However, while it is *possible* that subsection (c) of the fraud charge included in the current Administrative Regulations could be used in the same way Plaintiff alleges the false reporting charge was previously used, any future fraud charge brought against Plaintiff or any other inmate allegedly in retaliation for filing a grievance would be highly fact-specific, and "review of future instances of wrongful behavior may be quite different [from] the complained-of example that already has ceased." *Hale*, 683 F. Supp. 2d. at 1198 (quoting *Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rights Ctr.*, 491 F.3d 1143, 1150 (10th Cir. 2007)); *see also Gibson v. Pacheco*, No. 09-cv-02328-WYD-KLM, 2012 WL 4034039, at *3-4 (April 12, 2012) (recommending that the plaintiff's request for a permanent injunction be denied as moot). The "mere possibility" that the current Administrative Regulations may be used in the

-49-

manner Plaintiff alleges Defendants used the false reporting charge "is insufficient to enliven a moot controversy." *Browne v. Grand Junction*, 14-cv-00809-CMA-KLM (D. Colo. March 30, 2015).[20]  Further, there is no reason to believe that the fraud charge included in the current Administrative Regulations has or will be used in the same way that the false reporting charge was allegedly used in this case in response to Plaintiff's filing of a grievance.   If it is used in that way, "the Court would be required to review factual contentions that are wholly separate from the factual allegations at issue in this case." *Gibson*, 2012 WL 4034039, at *4.  In essence, what Plaintiff seeks is a declaratory judgment that the Administrative Regulations may not be used in the future in an unconstitutional way.   *See F.E.R.*, 58 F.3d at 1534 (explaining that voluntary cessation doctrine did not save injunctive relief claim because of the plaintiffs' claims were too speculative).  Therefore, the Court finds that Defendants have met their burden of showing an "unlikelihood of recurrence." *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1525 (10th Cir. 1992) (citing *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)); *Browne*, at 12. The Court therefore concludes that the doctrine of voluntary cessation does not provide an exception to the mootness of Plaintiff's claim for injunctive relief.

Furthermore, the Court finds that Plaintiff's case does not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).  This exception only applies where two narrow conditions are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same

---

[20]  This decision is not yet available on Westlaw and is, therefore, attached to this Order.

complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citations omitted). Both conditions must be satisfied to apply the exception. *Id.* While it is *possible* that some other charge in the COPD may be used to allegedly retaliate against Plaintiff in the future, "[n]o interest of [the litigant's] would be served by invalidating [those rules] now." *See Hale*, 683 F. Supp. 2d. at 1199 (citation omitted) (finding no reasonable expectation when "any opinion reached or injunction ordered would be merely advisory and would not provide Plaintiff with any relief from his current conditions").

Accordingly, while Plaintiff has stated a cognizable First Amendment retaliation claim against Defendant Henderson, to the extent he asserts a claim for injunctive relief, that claim is moot. The Court **grants** the Motion [#24] to the extent it seeks dismissal of the claim for injunctive relief against Defendant Henderson in his individual capacity, and the First Amendment retaliation claim for injunctive relief against Defendant Henderson in his individual capacity is **dismissed with prejudice.**[21] The Court **denies** the Motion [#24] to the extent it seeks dismissal of the claim for other forms of relief against Defendant Henderson in his individual capacity.

### d. Defendants Harms, Wood, Lueck, and Unknown SCF Administrative Head.

As the Court noted above, Plaintiff's allegations meet the first and second elements of a First Amendment retaliation claim because: (1) Plaintiff engaged in constitutionally protected conduct when he filed a grievance, and (2) the COPD charges filed against him,

---

[21]   Prejudice should attach to a dismissal where a plaintiff's amended pleadings would fail to cure the deficiencies in his claims. *Sheldon v. Vermonty,* 269, F. 3d 1202, 1207 n.5 (10th Cir. 2001).

-51-

and the resulting placement in punitive segregation, would chill a person of ordinary firmness from continuing to engage in that activity. *See Mimics*, 394 F.3d at 847 (citations omitted). However, Plaintiff's allegations regarding the conduct of Defendants Harms, Wood, Lueck, and the "Unknown SCF Administrative Head" fail to establish that those Defendants had a retaliatory motive or personally participated in the alleged constitutional harm. *See Dawson v. Johnson,* 266 F. App'x 713, 716 (10th Cir. 2008) (holding that plaintiff's allegations failed to state a claim for retaliation where the defendants' only involvement was that they: presided over the disciplinary hearing at which plaintiff was convicted; investigated the charge and presented facts in support of the charge at the hearing; and affirmed the Plaintiff's conviction, respectively); *see also Laratta v. Raemisch*, No. 12-cv-02079-MSK-KMT, 2014 WL 1237880 at *5 (D. Colo. 2014) (holding that defendant prison officials were entitled to qualified immunity for an inmate's retaliation claim because they did not violate his constitutional rights where they presided over the disciplinary hearing regarding COPD false reporting charges, presented factual evidence against the inmate, and affirmed the inmate's conviction).

Regarding Defendant Harms, Plaintiff alleges that: (1) Defendant Harms continued Plaintiff's hearing on the COPD charges from December 28, 2011 to January 10, 2012 after discovering that the charge had mistakenly been identified as a Class II violation instead of a Class I violation; (2) Defendant Harms "was the Board Chairman" at the January 10, 2012 hearing before a panel of three officers regarding the COPD false reporting charge against Plaintiff; and (3) that "by finding Plaintiff guilty of False Reporting Defendant Harms violated [Plaintiff's] right to be free from retaliation for exercising his right to free speech and redress of grievances." *Am. Compl.* [#9] at 11-12. Because Plaintiff alleges only that

Defendant Harms presided over the disciplinary hearing at which Plaintiff was convicted for COPD false reporting charges, and makes no further factual allegations that would show Defendant Harms acted with a retaliatory motive, Plaintiff fails to state a First Amendment Retaliation claim against Defendant Harms. *See Laratta,* 2014 WL 1237880 at *5. Accordingly, the Court **grants** the Motion [#24] to the extent it seeks dismissal of the First Amendment claim against Defendant Harms in his individual capacity, and that claim is **dismissed without prejudice.**[22]

Regarding Defendant Wood, Plaintiff alleges that: (1) Defendant Wood was one of three officers on the panel that conducted the hearing regarding the COPD false reporting charge against Plaintiff and (2) that "by finding Plaintiff guilty of false reporting [Defendant] Wood violated [Plaintiff's] right to be free from retaliation for exercising his right to free speech and redress of grievances." *Am. Compl.* [#9] at 11-12. For the same reasons that Plaintiff fails to state a claim against Defendant Harms, the Court concludes that Plaintiff also fails to state a First Amendment Retaliation claim against Defendant Wood. Accordingly, the Court **grants** the Motion [#24] to the extent it seeks dismissal of the First Amendment claim against Defendant Wood in his individual capacity, and that claim is **dismissed without prejudice.**[23]

Regarding Defendant Lueck, Plaintiff alleges that: (1) Defendant Lueck was one of

---

[22] Prejudice should not attach to a dismissal when a plaintiff has made allegations, "which, upon further investigation and development, could raise substantial issues." *See Reynoldson,* 907 F. 2d at 127.

[23] Prejudice should not attach to a dismissal when a plaintiff has made allegations, "which, upon further investigation and development, could raise substantial issues." *See Reynoldson,* 907 F. 2d at 127.

three officers on the panel that conducted the hearing regarding the COPD false reporting charge against Plaintiff and (2) that "by finding Plaintiff guilty of false reporting [Defendant] Lueck violated [Plaintiff's] right to be free from retaliation for exercising his right to free speech and redress of grievances." *Am. Compl.* [#9] at 11-12.  For the same reasons that Plaintiff fails to state a First Amendment retaliation claim against Defendant Harms, the Court concludes that Plaintiff also fails to state a First Amendment retaliation claim against Defendant Lueck in his individual capacity. Accordingly, the Court grants the Motion [#24] to the extent it seeks dismissal of the First Amendment Retaliation claim against Defendant Lueck, and that claim is **dismissed without prejudice.**[24]

Regarding Defendant Unknown Administrative Head, Plaintiff alleges that "on or about January 18, 2012, [Plaintiff] appealed his COPD conviction for false [r]eporting," and that the "Disposition of Charges . . . states that the conviction was upheld by an Unknown Administrative Head on February 1, 2012." *Am. Compl.* [#9] at 12.  Plaintiff further alleges that "by upholding the COPD conviction this Unknown Administrative Head also violated Mr. Perrian's right to be free from retaliation for the exercise of his right to Free Speech and redress of grievances." *Id.* at 12-13.   As the Court noted above, allegations that a defendant affirmed an inmate's conviction of disciplinary charges are insufficient to state a claim for retaliation pursuant to the First Amendment.  *See Dawson,* 266 F. App'x at 716; *Laratta*, 2014 WL 1237880 at *5.  Accordingly, the Court concludes that Plaintiff has failed to state a claim on which relief may be granted against Defendant Unknown Administrative

---

[24]   Prejudice should not attach to a dismissal when a plaintiff has made allegations, "which, upon further investigation and development, could raise substantial issues." *See Reynoldson,* 907 F. 2d at 127.

Head because Plaintiff has alleged only that this unknown Defendant affirmed his conviction of the COPD false reporting charges. *See id.* Accordingly, the Court **grants** the Motion [#24] to the extent it seeks dismissal of claims against Defendant Unknown Administrative Head, and the claim against Defendant Unknown Administrative head is **dismissed without prejudice.**[25]

## IV.  Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#24] is **GRANTED in part** and **DENIED in part**, and Plaintiff's claims are dismissed as follows:

Plaintiff's official capacity claims against Defendants for monetary relief are **DISMISSED without prejudice** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity.

Plaintiff's claim against the Executive Director of the CDOC in his official capacity is **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 8, to the extent he seeks injunctive and declaratory relief.

Plaintiff's claim against the Executive Director of the CDOC in his individual capacity is **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 25(a)(1).[26]

Plaintiff's individual capacity claims brought pursuant to the Eighth Amendment

---

[25]   Prejudice should not attach to a dismissal when a plaintiff has made allegations, "which, upon further investigation and development, could raise substantial issues." *See Reynoldson,* 907 F. 2d at 127.

[26]   *See Miskovsky v. Jones*, 559 F.App'x 673, 675 (10th Cir. 2014) (unpublished decision) (affirming district court dismissal with prejudice pursuant to Fed. R. Civ. P. 25(a); *Russell v. City of Milwaukee*, 338 F.3d 662, 663-68 (7th Cir. 2003) (same).

against Defendants Coons, Brown, and Graham; and his individual capacity claims for retaliation brought pursuant to the First Amendment against Defendants Chapdelaine, Usry, Harms, Wood, Lueck, and Unknown Administrative Head are **DISMISSED without prejudice**[27] pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's First Amendment retaliation claim against Defendant Henderson for injunctive relief is **dismissed as moot.**

The only remaining claim is Plaintiff's First Amendment retaliation claim against Defendant Henderson in his individual capacity to the extent Plaintiff seeks monetary damages.[28]

---

[27] The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial. *Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *accord Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *see also Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice) (unpublished table decision). However, due to heightened concerns when the plaintiff is proceeding pro se, "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice." *Gee*, 627 F.3d at 1186.

[28] The Court is aware that the PLRA provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). However, neither Plaintiff nor Defendants raise the issue of the PLRA in the pleadings, Motion, or Response. Therefore, the Court does not decide here whether Plaintiff's claim for compensatory damages against Defendant Henderson is barred.

The Court notes that § 1997e(e) only limits the relief to which plaintiffs are entitled; it does not restrict their access to the courts to bring claims for which the substantive law provides an underpinning. *Perkins v. Kansas Dept. of Corr.*, 165 F. 3d 308, 807 (10th Cir. 1999). While the plain language of § 1997e(e) applies  to actions "for mental or emotional injury" and a claim for *compensatory* damages would clearly be barred in the absence of any showing of physical injury, it is not clear that a claim for either punitive or nominal damages would also be barred. *Id.* (citing *Carey v. Piphus,* 435 U.S. 247 266 (1978) and noting that nominal damages, for instance, are available for the violation of certain "absolute" constitutional rights, such as due process, without any showing of actual injury); *see also Searles v. Van Bebber,* 251 F. 3d 869, 879-881 (10th Cir. 2001).

Plaintiff has alleged some physical injury in his complaint: that the handcuffs applied by

Dated:  March 31, 2015                    BY THE COURT:

                                          Kristen L.  Mix
                                          United States Magistrate Judge

---

Defendant Coons cut the skin of his right wrist and that a medial examination revealed that he was
"bleeding from where [the handcuffs] had been applied." *Am. Compl.* [#9] at 8-9.  The Court does
not decide here whether that alleged injury meets the physical injury requirement of § 1997e(e).
"Appeals courts confronting the issue have held that although a de minimis showing of physical
injury does not satisfy the PLRA's physical injury requirement, an injury need not be significant to
satisfy the requirement." *Clifton v. Eubank,* 418 F. Supp. 2d 1243, 1245 (D. Colo. 2006).  Further,
the injury alleged by Plaintiff relates to the conduct that formed the basis for his Eighth Amendment
claims, which the Court dismissed above for failure to state a claim. The alleged injury does not
relate to the First Amendment retaliation claim against Defendant Henderson.  The parties do not
address these issues, and the Court will not sua sponte dismiss Plaintiff's claim based on them.